1   ELIZABETH A. STRANGE
    First Assistant United States Attorney
2   District of Arizona

3   JONELL L. LUCCA
    Assistant U.S. Attorney
4   Arizona State Bar No. 021543
    Two Renaissance Square
5   40 North Central Avenue, Suite 1800
    Phoenix, Arizona  85004
6   Telephone:  602-514-7500
    Email: Jonell.Lucca@usdoj.gov
7   Attorneys for Plaintiff

8
                    IN THE UNITED STATES DISTRICT COURT
9
                       FOR THE DISTRICT OF ARIZONA
10

11  United States of America,                CV-16-04285-PHX-SRB
                                             CR-11-00731-002-PHX-SRB
12              Plaintiff-Respondent,
                                             **RESPONSE IN OPPOSITION TO**
13      vs.                                  **MOTION UNDER 28 U.S.C. § 2255 TO**
                                             **VACATE, SET ASIDE OR CORRECT**
14                                           **SENTENCE BY A PERSON IN**
    Artemio Pena-Torrecillas,                **FEDERAL CUSTODY**
15
                Defendant-Petitioner.
16
            Now comes the United States of America, by and through its undersigned attorneys,
17
    and responds to Defendant's motion pursuant to Title 28, United States Code, Section 2255
18
    (the Motion) (Civil CR 1).[1]  The government requests that the Court deny the Motion for
19
    the reasons set forth in the attached Memorandum of Points and Authorities.
20
                        **MEMORANDUM OF POINTS AND AUTHORITIES**
21

22

23      [1]  The abbreviation "Civil CR" refers to the Clerk's Record for the civil case, and is
    followed by the pertinent document numbers.  The abbreviation "CR" refers to the Clerk's
24  Record for the criminal case, and is followed by the pertinent document numbers.     The
    abbreviation "RT" refers to the Reporter's Transcript and will be followed by a date and
25  relevant page number(s).  The abbreviation "Pre-Plea Guidelines" refers to the Preliminary
    U.S.S.G. Report Pre-Plea prepared on March 28, 2012.  The abbreviation "2012 PSR"
26  refers to the Presentence Report prepared on August 8, 2012 and revised September 5,
    2012, following Defendant's guilty plea.  The abbreviation "PSR" refers to the final 2013
27  Presentence Report prepared on July 3, 2013.  As to any of the PSR documents, the United
    States will provide them in a sealed envelope if the Court requests copies, and the
28  abbreviation will be followed by the relevant paragraph or page number(s).

1

## I.   STATEMENT OF FACTS

2

On January 24, 2010, Drug Enforcement Administration ("DEA") agents in Denver,

3

while conducting an investigation of a different drug trafficking organization ("DTO"),

4

intercepted a phone call with Manuel Castro-Perez ("Castro-Perez").  (TT7 1/24/11 Aff. at

5

¶ 17.)[2]  The conversation related to the quality of, and delivery of, narcotics to a stash house

6

in Phoenix.  (TT7 1/24/11 Aff. at ¶ 17.)  The investigation eventually identified Castro-

7

Perez as a distributor of narcotics in Phoenix.  (TT7 1/24/11 Aff. at ¶ 17.)

8

Beginning in June of 2010, DEA obtained court authorization to intercept Target

9

Telephones ("TT") 1-6, utilized by Castro-Perez and a target ultimately identified as Pedro

10

Aviles-Contreras, one of the narcotics suppliers used by Castro-Perez.  (TT7 1/24/11 Aff.

11

at ¶ 16a-g.)  Based upon intercepted calls over TT3, used by Castro-Perez, agents began

12

investigating an individual later identified as Cruz Samuel Ortega-Ruano ("Cruz").  Cruz

13

was one of Castro-Perez's narcotics customers.  (TT7 1/24/11 Aff. at ¶¶ 15a, 18, 25.)  The

14

investigation into Cruz began at the end of August/early September 2010.  (TT7 1/24/11

15

Aff. at ¶¶ 15a, 25.)

16

After agents used traditional investigative techniques for nearly five months, DEA

17

obtained court authorization for a wiretap on TT7, a phone used by Cruz.  The TT7 wiretap

18

was authorized on January 24, 2011.  (CR 496; RT 5/22/13 116.)  Later in January, agents

19

intercepted calls via TT7 with Defendant, who was using TT9.  (TT9 3/15/11 Aff. at ¶¶ 27-

20

36.)  After agents used traditional investigative techniques for nearly two months, on March

21

15, 2011, DEA obtained court authorization for a wiretap on TT9, Defendant's phone.  (CR

22

496; RT 5/22/13 120.)

23

During the course of the investigation, Defendant lived with Cruz in a house on San

24

Miguel Avenue in Phoenix and assisted him in his drug operations.  (PSR ¶ 6; CR 496; RT

25

26

27

28

[2] The TT7 1/24/11 affidavit is Exhibit 1A-C of CR 373, 374, and unredacted pages are found at Exhibit 1 of CR 385.  The TT7 and TT8 2/22/11 affidavit is Exhibit 2 of CR 385, and Pages 37-49 of the TT9 3/15/11 affidavit is Exhibit 3 of CR 385.  Pages 1-36 of the TT9 3/15/11 affidavit are Exhibits 2 and 2(A) of CR 375.

5/22/13 123.)    On February 10, 2011, phone calls between Cruz, Defendant, and an unidentified male indicated that the male was going to deliver a car with narcotics to one of the Cruz stash houses.  (PSR ¶ 7; CR 498; RT 5/24/13 570-72.)  On February 11, 2011, Defendant, using TT9, and Cruz, using TT7, discussed where Defendant had placed narcotics proceeds within the Cruz stash house, believed to be in the oven.  (PSR ¶ 8; TT9 3/15/11 Aff. at ¶¶ 29-30; CR 498; RT 5/24/13 572-73.)  On February 13, 2011, Cruz and Defendant discussed using a black vehicle to drive a load of drugs, the quantity of narcotics they needed, and whether Defendant would make a delivery to a co-conspirator.  (PSR ¶ 7; CR 498; RT 5/24/13 573-74.)

On March 12, 2011, the Navajo County Sheriff's Office conducted a traffic stop on a Dodge Charger and located 2.218 kilograms of methamphetamine in a hidden compartment.  (PSR ¶ 12; CR 498; RT 5/24/13 602.)  The two occupants were known DTO couriers.  (PSR ¶ 12; CR 498; RT 5/24/13 602.)  An intercepted call on March 13, 2011, led agents to believe the methamphetamine belonged to Defendant. (CR 498; RT 5/24/13 602.)  A call between Defendant and Cruz on March 13, 2011, indicated that they planned to move contraband to a Cruz stash house located at 82nd Lane in Phoenix to avoid detection by law enforcement.  (PSR ¶ 13; CR 498; RT 5/24/13 603-05.)  Agents conducted surveillance and witnessed Defendant at the 82nd Lane location shortly after what appeared to be a delivery consistent with the phone conversation.  (PSR ¶ 13.)  The delivery appeared to be items contained in black garbage cans.  (PSR ¶ 13; CR 498; RT 5/24/13 606-10.)

On March 21, 2011, agents intercepted a telephone call between Defendant, a co-conspirator, and an unidentified male.  (PSR ¶ 14.)  The parties to the call discussed "two girls" Defendant had ordered and where they should meet.  (PSR ¶ 14; CR 498; RT 5/24/13 618-20; 627-28.)  "Girls" is a code word for narcotics.  (TT9 3/15/11 Aff. at ¶ 43.)  Agents observed the co-conspirator and Defendant meet at one of the Cruz stash houses.  (PSR ¶ 14; CR 498; RT 5/24/13 628-32.)

Between April 9, 2011 and April 11, 2011, Defendant discussed coordinating a delivery of "five," using a truck for the delivery. (PSR ¶ 17; CR 499; RT 5/28/13 664-83.) On April 11, 2011, agents saw a car leaving the San Miguel stash house with a truck following it. (PSR ¶ 17; CR 497 5/23/13 451-61.) Agents followed the vehicles to another location. (PSR ¶ 17; CR 497 5/23/13 451-61.) The car and truck left quickly and separately after arriving. (PSR ¶ 17.) A traffic stop of the truck shortly thereafter revealed 5.5 pounds of methamphetamine. (PSR ¶ 17; CR 495; RT 5/21/13 75-87; CR 496; RT 5/22/13 135-38.) The truck's driver and passenger were known Cruz DTO couriers. (PSR ¶ 17.)

On April 12, 2011, based on the drug seizure the day before, agents executed a search warrant at the San Miguel house. (PSR ¶ 18; CR 496; RT 5/22/13 138.) Agents arrested Defendant and Cruz at the house. (PSR ¶ 18; CR 496; RT 5/22/13 138-39.) Agents seized $23,283 in cash, five handguns, two AK-47-style rifles, firearm magazines, ammunition, a scale, 28.7 grams of cocaine and .47 grams of methamphetamine. (PSR ¶ 18; CR 496; RT 5/22/13 139-49; CR 497; RT 5/23/13 462-66.)

Agents continued to monitor the activities of other members of the DTO. On April 13, 2011, a car loaded with the black garbage cans was stopped leaving the 82nd Lane stash house. (PSR ¶ 19; CR 497; 5/23/13 466-78.) A search of the black garbage cans revealed 46 AK-47-style rifles and 209 firearm magazines. (PSR ¶ 19; CR 497; 5/23/13 466-78.) Agents later conducted a search of the 82nd Lane stash house and of another location used by the Cruz DTO. (PSR ¶ 20; CR 496; RT 5/22/13 149-51.) At those locations, agents found 1.74 kilograms of methamphetamine, drug packaging materials, a handgun, two PS-90-style rifles, four AK-47-style rifles, firearm magazines and ammunition. (PSR ¶ 20; CR 496; RT 5/22/13 149-51.)

## II.    PROCEDURAL HISTORY

### A. Criminal Charges and Litigation by Mr. Bresnehan

On April 19, 2011, a federal grand jury returned an indictment charging Defendant with one count of Conspiracy to Possess with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 846 (Count 1), one count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) (Count 2), and a forfeiture allegation. (CR 16.)  Cruz and three other defendants were charged as well in the indictment.  The Court appointed defense counsel Michael Bresnehan to represent Defendant.  On May 18, 2011, a federal grand jury returned a first superseding indictment charging Defendant with one count of Conspiracy to Possess with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 846 (Count 1); one count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) (Count 2); and Alien in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(5) and 924(a)(2) (Count 3) and a forfeiture allegation. (CR 32.)

Between June 16, 2011 and May 8, 2012, Mr. Bresnehan filed numerous pre-trial notices and motions on behalf of Defendant including Notice of Defendant's Assertion of Fifth and Sixth Amendment Rights (CR 57); Motion to Compel Discovery (CR 183); Motion to Compel Disclosure of Experts and Related Information (CR 184); Motion in Limine re: Other Drugs (CR 186); Motion for Hearing re: Motion in Limine (CR 187); Amended Motion to Compel Discovery (CR 192); Motion to Appoint Expert and Motion for Funds for Expert (CR 193); Motion to Cleanse Codefendant's Confessions/Motion to Sever (CR 194); Motion to Suppress Statements (CR 195); Motion to Compel Discovery re: Pole Camera Footage (CR 196); Motion for *James* Hearing (CR 197); and Amended Motion to Appoint Expert and Motion for Funds for Expert (CR 248), as well as replies to the government's responses to these motions.  (CR 223, 224, 230-235, 279.)   Mr. Bresnehan also filed responses to the government's pre-trial motions.  (CR 210, 211.)

**B.  Resolution by Guilty Plea**

On March 15, 2012, the Court held a status conference and referred the case to the magistrate court for a global criminal settlement conference. (CR 216.)  On March 28, 2012, the Probation Department prepared Pre-Plea Guidelines for Defendant. The Pre-Plea Guidelines calculated Defendant's total offense level for Count 1 as:

| | |
|---|---|
| Base Offense Level | 42 |
| *marijuana equivalency of 44,358.6866kg*, Dangerous Weapons Possessed, and Maintain Premises | |
| If Defendant convicted under 18 U.S.C. § 1956 | +2 |
| Adjusted Offense Level | <u>44</u> |
| Acceptance of Responsibility | -3 |
| Total Offense Level | 41 |

Defendant was in Criminal History Category I.   The sentencing range was calculated to be 324-405 months' imprisonment.  On April 3, 2012, U.S. Magistrate Judge Lawrence O. Anderson held a global criminal settlement conference. (CR 239.)  A court reporter was not present for the settlement conference; no transcript was prepared.  In a later pleading, the government noted that Magistrate Judge Anderson spent over two hours meeting with the parties, discussed the case, and successfully obtained a beneficial stipulation for Defendant.  (*See* CR 340.)   Mr. Bresnehan recalls the same about the settlement conference.  (*See* Exhibit 1, ¶¶ 9-10.)

In April 2012, the government and Defendant negotiated a plea agreement to resolve Defendant's case. (*See* Exhibit 1, ¶¶ 10-11.)  On April 30, 2012, the Court set a change of plea hearing for Defendant. (CR 252.)  On May 4, 2012, Judge Anderson held a change of plea hearing. (CR 485.)  The plea contained a stipulation that Defendant would receive no greater than the low end of the sentencing guidelines as determined by the Court and did not preclude any request by Defendant for downward departures or variances. (CR 274, 275.)  Mr. Bresnehan advised the Court that the anticipated Total Offense Level for Defendant was 40 after acceptance of responsibility. (CR 485; RT 5/4/12 4.)  Defendant

1   entered his guilty plea, and the magistrate court recommended the Court accept the guilty
2   plea.  (CR 273-276.)  Sentencing was set for September 10, 2012.

3   **C. Substitution of Mr. Morgan as Counsel, Original Sentencing, and**
4   **Withdrawal of Guilty Plea**

5   On June 7, 2012, retained defense counsel Mr. Cameron Morgan filed a motion to
6   substitute attorney.  (CR 291.)  On June 8, 2012, Mr. Bresnehan filed a motion to withdraw
7   as attorney.  (CR 293.)  On June 21, 2012, the Court granted both motions.  (CR 299.)  Mr.
8   Bresnehan was relieved as counsel of record, and Mr. Morgan represented Defendant.  (CR
9   299.)

10   The Probation Department prepared the 2012 PSR on August 8, 2012 and revised it
11   on September 5, 2012.  The 2012 PSR calculated Defendant's total offense level for Count
12   1 as:

13   Base Offense Level                                      38
14   *marijuana equivalency of 44,358.6866kg*
15   Dangerous Weapons Possessed                   +2
16   Role in the Offense                                      +4
17   *organizer or leader*
18   Adjusted Offense Level                              <u>44</u>
19   Treat any Adjusted Offense Level over Level 43 as      43

20   Defendant was in Criminal History Category I.  The sentencing range was calculated
21   to be life, but the 2012 PSR recommended a sentence of 360 months of imprisonment
22   following a suggested variance.  The 2012 PSR also unexpectedly did not award Defendant
23   an additional three levels for acceptance of responsibility.  With three levels for acceptance
24   of responsibility, the Total Offense Level would have been 41, CHC I, with a sentencing
25   range of 324-405 months.

26   Defendant moved to continue his sentencing, which the Court granted, setting it on
27   December 3, 2012.  (CR 319, 321.)  On October 26, 2012, Defendant filed a Motion to
28   Withdraw Plea of Guilty, which the government opposed.  (CR 336, 340.)  The Court held

- 7 -

1    a hearing on November 29, 2012, at which the parties and the Court discussed the status of

2    the case.  (CR 350.)  The Court continued the hearing so the parties could talk, and Mr.

3    Morgan could talk further with Defendant, and reset the sentencing to January 28, 2013.

4    (CR 350.)  On December 13, 2012, the Court held the continued hearing, and granted

5    Defendant's motion to withdraw his guilty plea.  (CR 368.)  The case was set for trial, and

6    then continued several times.

7        **D. Motion to Suppress Wiretaps, Second Superseding Indictment, and Oral**

8            **Argument**

9        On January 11, 2013, Defendant filed a motion to suppress all of his statements

10   intercepted over the wiretaps of TT7 and TT9, arguing a lack of probable cause and a lack

11   of necessity for each.  (CR 372, 373, 374, 375.)  Defendant also requested a *Franks* hearing.

12   (CR 372.)   The government responded on February 4, 2013, arguing the affidavits

13   demonstrated both probable cause and necessity to intercept the phones and that there were

14   no material omissions or misrepresentations in the affidavits, therefore no *Franks* hearing

15   was necessary.  (CR 385.)

16       On March 12, 2013, a federal grand jury returned a second superseding indictment

17   charging Defendant with one count of Conspiracy to Possess with Intent to Distribute a

18   Controlled Substance in violation of 21 U.S.C. § 846 (Count 1); one count of Conspiracy

19   to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) (Count 2); Alien in

20   Possession of a Firearm in violation of 18 U.S.C. § 922(g)(5) and 924(a)(2) (Count 3);

21   Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. 841(a)(1)

22   and (b)(1)(A)(viii) (Counts 7 and 9) and Possession of a Firearm in Furtherance of a Drug

23   Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (c)(1)(C)(i) (Counts 8

24   and 10) and a forfeiture allegation.  (CR 396.)

25       On March 25, 2013, the Court heard lengthy oral argument on Defendant's motion

26   to suppress and the *Franks* hearing request.  (*See* CR 492.)  The Court found that "the

27   defendant has failed to make a substantial preliminary showing of misrepresentations or

28   omissions of material facts."  (CR 404; CR 492; RT 3/25/13 40.)  Accordingly, the Court

denied the motion for a *Franks* hearing.  The district court also denied the motion to suppress, ruling that the issuing court did not abuse its discretion when it found that probable cause existed and that the wiretap was a necessary investigative technique in this case.  (CR 404; CR 492; RT 3/25/13 41.)

### E.  Trial and Sentencing

The four co-conspirators, including Cruz, charged in the original indictment pleaded guilty.  Defendant was the only one who proceeded to trial.  At the pretrial conference, on the government's oral motion, the Court dismissed Count 3 without prejudice.  (CR 422; RT 5/13/13 6-7.)  As detailed throughout this Response, the jury heard overwhelming evidence during a seven-day trial.  (*See* CR 495-501.)  On May 30, 2013, the jury found Defendant guilty of all of the remaining counts.  (CR 452, 489.)

The Probation Department prepared the PSR on July 3, 2013.  The PSR calculated Defendant's total offense level for Counts 1, 2, 7 and 9 as:

| | |
|---|---|
| Base Offense Level | 38 |
| *marijuana equivalency of 44,358.6866kg* | |
| Role in the Offense | +4 |
| *organizer or leader* | ___ |
| | 42 |

Defendant was in Criminal History Category I.  The sentencing range was calculated to be 360 months to life on Counts 1, 7, and 9, with a statutory maximum sentence of 240 months on Count 2.  As to Counts 8 and 10, Possession of a Firearm in Furtherance of a Drug Trafficking Crime, the sentences were calculated as 5 years and 25 years respectfully, resulting in 30 years served consecutive to Counts 1, 2, 7, and 9.

There were no objections filed.  However, the government moved for the consolidation of Counts 8 and 10 for sentencing purposes.  (CR 459.)  Due to the conjunctive wording in the jury instructions on these counts, it was unclear upon which predicate each of the convictions relied.  (CR 459.)  Out of an abundance of caution, the government asked that the Court sentence Defendant as if he had been convicted of only

one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime.  (CR 459.)  The Court granted the motion.  (CR 462.)

At the sentencing hearing on August 12, 2013, Defendant requested a below-guidelines sentence.  The Court sentenced Defendant to 360 months' imprisonment on Counts 1, 7, and 9, 240 months' imprisonment on Count 2, and 120 months of consecutive imprisonment on Count 8.  (CR 462, 463, 466.)

### F.  Defendant's Direct Appeal

Following entry of the final judgment, Mr. Morgan filed a timely notice of appeal on behalf of Defendant on August 23, 2013. (CR 467.)  Ms. Nancy Hinchcliffe was appointed to represent Defendant during his appeal.  Defendant argued on appeal that the Court erred in not suppressing the wiretaps in his case.  On August 3, 2016, the Ninth Circuit filed a Memorandum decision affirming Defendant's convictions and sentence in *United States v. Pena-Torrecillas*, 658 F. App'x 864 (9th Cir. 2016).  The Ninth Circuit filed its formal mandate on August 26, 2016.  (CR 535.)

### G.  Sentence Reduction and 28 U.S.C. § 2255 Motion

On November 9, 2016, the Court reduced Defendant's sentence to 292 months' imprisonment on Counts 1, 7, and 9 and affirmed all other aspects of Defendant's original sentence.  (CR 541.)  On December 6, 2016, Defendant, who is in federal custody, filed his pro se "Motion Under 28 U.S.C. § 2255 to Vacate Set Aside or Correct Sentence by a Person in Federal Custody." (Civil CR 1.)

Defendant contends that he was denied effective assistance of counsel. (Civil CR 1.)  The Court found that Defendant alleges three claims for relief that the government shall answer: (1) he received ineffective assistance of counsel with regard to pleading guilty and the Court authorized substitute counsel without proper procedures, (2) his substitute counsel was ineffective, had a conflict of interest, and committed grave mistakes, and (3) his appellate counsel was ineffective.

III.   **GENERAL PRINCIPLES WITH RESPECT TO INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS WITHIN § 2255 MOTIONS**

A federal prisoner may seek relief under 28 U.S.C. § 2255 if (1) his sentence was imposed in violation of the United States Constitution or the laws of the United States; (2) the sentencing court had no jurisdiction to impose the sentence on the prisoner; (3) the sentence imposed exceeded the maximum sentence authorized, or (4) the sentence is "otherwise subject to collateral attack."  § 2255(a).  A sentence is "otherwise subject to collateral attack" when it contains "a fundamental defect which inherently results in a complete miscarriage of justice."  *Davis v. United States*, 417 U.S. 333, 346, 356 (1974) (quotation marks and citation omitted).

A § 2255 petition is an "extraordinary remedy," however, and "will not be allowed to do service for an appeal."  *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)).  A prisoner may not raise a claim that has already been resolved on direct appeal.  *See United States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985) ("[s]ection 2255 is not designed to provide criminal defendants repeated opportunities to overturn their convictions on grounds which could have been raised on direct appeal"); *Egger v. United States*, 509 F.2d 745, 748 (9th Cir. 1975).  If a prisoner could have raised a claim on direct appeal but did not do so, he has "procedurally defaulted" on that claim and cannot present it in a § 2255 petition unless he shows (1) cause for failing to raise it on direct appeal and "actual prejudice" from that failure or (2) that he is "actually innocent."  *Bousley*, 523 U.S. at 622; *United States v. Braswell*, 501 F.3d 1147, 1149 (9th Cir. 2007).

"Cause" is "some objective factor external to the defense" that impeded a prisoner from properly raising the claim in the lower court.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The Supreme Court has made clear, however, that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* at 486.  It has excused procedural default on collateral review therefore only (1) where, in a state court proceeding,

the claim was "novel," *Reed v. Ross*, 468 U.S. 1, 16 (1984), (2) where the defendant received ineffective assistance of counsel, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (ineffective assistance will excuse default "in certain circumstances"), or (3) where the defendant is actually innocent, *McQuiggin v. Perkins*, 569 U.S. 383, 393, 133 S. Ct. 1924, 1932 (2013); *Bousley*, 523 U.S. at 622-23.

A prisoner suffers "actual prejudice" if an alleged error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). The "cause and prejudice" standard is more difficult for petitioners to meet than the plain error standard, which applies to defaulted claims on direct review. *Id*. at 164-66, 185. A prisoner is "actually innocent" for procedural default purposes if the alleged constitutional violation he seeks to raise "has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 ("'actual innocence' means factual innocence, not mere legal insufficiency") (internal quotations and citations omitted).

A claim is exempt from the procedural default rule if it cannot be presented without further factual development. *Id*. at 621. A claim of ineffective assistance of counsel falls within this exemption. *Massaro v. United States*, 538 U.S. 500, 509 (2003); *United States v. Alferahin*, 433 F.3d 1148, 1160 n.6 (9th Cir. 2006).

## IV.   DEFENDANT'S CLAIMS REGARDING HIS SUBSTITUTION OF COUNSEL, MR. MORGAN'S ALLEGED CONFLICT OF INTEREST, AND APPELLATE COUNSEL ARE PROCEDURALLY BARRED

Defendant failed to challenge the Court's grant of his requested substitution of counsel, Mr. Morgan's alleged conflict of interest, or his convictions pursuant to *Alleyne v. United States*, 570 U.S. 99 (2013) or *Johnson v. United States*, 576 U.S. ____, 135 S. Ct. 2551 (2015) on direct appeal. "The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising it on collateral review."

*Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350-51 (2006). A defendant can overcome that bar if he shows cause and prejudice for his procedural default. *See id.* at 351; *see also United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default").

Defendant cannot show cause and prejudice as defined above. He attempts to establish cause by claiming ineffective assistance by Ms. Hinchcliffe in failing to raise several claims on appeal, which prejudiced him. To succeed on claims of ineffective assistance of appellate counsel, Defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency in counsel's performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984); *United States v. Baker*, 256 F.3d 855, 862 (9th Cir. 2001); *see Hedlund v. Ryan*, 854 F.3d 557, 576 (9th Cir. 2017). Defendant cannot show that counsel's performance was so deficient that it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

The performance prong standard is rigorous: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeals." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Consequently, "absent contrary evidence, 'we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy.'" *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008) (quoting *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998)). The prejudice prong is equally rigorous. *Id*. Defendant must show that "the result of the proceeding would have been different" had counsel raised the claim in question on appeal. *Id*. The analyses of these prongs often overlap in evaluating the performance of appellate counsel because appellate counsel's decision not to raise a weak issue on appeal shows simultaneously that counsel's performance was objectively reasonable and that counsel's performance did not prejudice the defendant. *Baker*, 256 F.3d at 862.

Defendant cannot establish cause as to any of his claims, and he is not actually innocent. His appellate counsel was not ineffective because she did not raise meritless arguments on appeal. As discussed below, the Court and Mr. Morgan followed the requirements of the applicable local rules when substituting Mr. Morgan as Defendant's counsel. There is no requirement that the Court hold a hearing before granting the motion—signed by Defendant—asking the Court to relieve Mr. Bresnehan and allow Defendant to proceed with Mr. Morgan as his defense attorney. Because there was no violation of any procedure by the Court or failure by Mr. Morgan to follow the local rules, appellate counsel was not ineffective in deciding this was not an issue for appeal.

As discussed in more detail below, Mr. Morgan had no conflict of interest in this case. The government made inquiries with Mr. Morgan as to who had paid him to handle Defendant's case; it also notified the Court of its inquiries. (*See* CR 340; 350; 368; 486; 490.) At two separate hearings on November 29, 2012 and December 13, 2012, at which Defendant was present and had an interpreter, the Court asked Defendant if he had any questions or wanted to say anything to the Court. (*See* CR 486; RT 11/29/12 19-20; CR 490; RT 12/13/12 3.) At no time did Defendant ever express any concern with Mr. Morgan's representation of him, and that was after listening to all parties and the Court discuss his case, his motion to withdraw his guilty plea, further anticipated litigation, and a trial schedule. *Id.* The fact that the government made an inquiry into the source of funds creates no conflict on Mr. Morgan's part. Because this claim is meritless, appellate counsel was not ineffective by not raising it on direct appeal.

Also, as discussed in this Response, the jury was presented with substantial evidence and it made findings beyond a reasonable doubt that allowed for the imposition of mandatory minimum sentences in Defendant's case. Therefore, there was no *Alleyne* error for appellate counsel to argue. Defendant's sentence was not impacted by the residual clause as Defendant was not charged pursuant to the Armed Career Criminal Act, and any argument otherwise would have been denied. Because Defendant cannot show cause as to

any of these claims, he may not raise his challenges for the first time in his habeas petition here.

Even if he could show cause, Defendant cannot meet the heavy burden of establishing that he suffered "actual prejudice" in this case to excuse his procedural default. Defendant requested that the Court allow him to substitute Mr. Morgan. There is no evidence Defendant's own choice of counsel actually prejudiced him. There is no evidence that his choice of counsel had any conflict. This argument is further disproved by Mr. Morgan's vigorous defense of Defendant. The jury found him guilty beyond a reasonable doubt of crimes that required imposition of a mandatory minimum sentence. The jury and Court did not, and did not need to, rely on the residual clause under § 924(c) when convicting Defendant for possessing a firearm in furtherance of a drug trafficking offense.

Because the Court followed proper procedures in granting Defendant's request to have Mr. Morgan substitute onto his case, there are no *Alleyne* errors as to his mandatory minimum sentences, and his § 924(c) conviction is unaffected by *Johnson*, Defendant's claims as to the Court, Mr. Morgan's alleged conflict of interest, and Ms. Hinchcliffe's assistance are procedurally barred.

## V.    DEFENDANT'S MOTION SHOULD BE DENIED

This Court should deny Defendant's Motion because he is not entitled to relief on any of his claims. The claims are either procedurally defaulted, fail to state a claim upon which relief may be granted, or are meritless.

### A. Ineffective Assistance of Counsel Generally

As stated above, to prevail on a claim of ineffective assistance of counsel, a prisoner must prove that (1) his counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency in his counsel's performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984); *see also Lockhart v. Fretwell*, 506 U.S. 364, 371-72, 113 S. Ct. 838, 844 (1993) (the prejudice analysis focuses on whether the result of the proceeding was fundamentally unfair or unreliable because of counsel's ineffectiveness). In evaluating the reasonableness of counsel's performance, this

1   Court "must be highly deferential." *Strickland*, 466 U.S. at 689.  Because this Court must

2   evaluate counsel's actions from counsel's perspective at the time of trial without the

3   "distorting effects of hindsight," this Court "must indulge a strong presumption that

4   counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

5   In evaluating whether counsel's actions prejudiced the defendant, this Court must

6   determine whether "a reasonable probability" exists that "but for counsel's unprofessional

7   errors, the result of the proceeding would have been different." *Id*. at 694.  A "reasonable

8   probability" is "a probability sufficient to undermine confidence in the outcome." *Id*.  In

9   resolving a prisoner's ineffective assistance claim, this Court need not address the

10  components of the claim in any particular order and need not address both components if

11  the prisoner does not satisfy one of them:

> [A] court need not determine whether counsel's performance
> was deficient before examining the prejudice suffered by the
> defendant as a result of the alleged deficiencies.  The object of
> an ineffectiveness claim is not to grade counsel's performance.
> If it is easier to dispose of an ineffectiveness claim on the
> ground of lack of sufficient prejudice, which we expect will
> often be so, that course should be followed.

16  *Id.* at 697; *accord Williams v. Calderon*, 52 F.3d 1465, 1470 n.3 (9th Cir. 1995).

17  **B.  Claim One: Defendant received ineffective assistance of counsel from**

18  **Mr. Bresnehan regarding pleading guilty**

19       Defendant contends in his first claim that he was denied effective assistance of

20  counsel because Mr. Bresnehan "consented [to] a plea to eminent life sentence that

21  spooked" Defendant.  (Motion at Page 4.)  Defendant elaborates, saying that he was

22  "hoodwinked to an eminent life sentence with total base offense level TBOL 48," and that

23  "no one in the right mind would voluntarily surrender his due process rights to trial in

24  exchange for perpetual life imprisonment."  (Civil CR 3 at Page 4.)  Defendant claimed

25  that was "exactly what defense counsel [Mr. Bresnehan] stipulated for the defense and

26  Petitioner rightly objected…."  *Id*.  Such a claim is false, misstates facts, and should be

27  denied.

28       The criminal case docket reflects that Mr. Bresnehan was diligent and effective

throughout his representation of Defendant.   Mr. Bresnehan filed numerous pre-trial motions as detailed above, in an effort to limit or preclude the evidence the government could present at trial.  Mr. Bresnehan details in his affidavit that he met with Defendant on numerous occasions, and advised him about his legal rights, the nature of the charges, possible new gun charges being filed, and the trial process.  (Exhibit 1 at ¶ 7.)  He also reviewed the contents and significance of the government's disclosure materials with Defendant.  (Exhibit 1 at ¶ 7.)  Mr. Bresnehan explained the statutory sentencing ranges, potential additional exposure if any gun charges were filed, the federal sentencing guidelines, and how the guidelines would affect his sentence if he were convicted at a trial.  (Exhibit 1 at ¶ 7.)  Mr. Bresnehan explained the government's plea offer to Defendant, including the stipulations and recommendations it contained.  (Exhibit 1 at

¶ 8.)  Further, Mr. Bresnehan states that he determined that Defendant's likely sentence would be "in the neighborhood of 292 months," with an offense level of 40 and criminal history category of I, and so advised his client.  (Exhibit 1 at ¶¶ 6, 8.)

Defendant's claim that Mr. Bresnehan was ineffective is further refuted by his physical presence at a change of plea hearing on May 4, 2012, before the Honorable U.S. Magistrate Judge Lawrence O. Anderson.  (*See* CR 485.)  During his change of plea, Defendant was responsive to Judge Anderson's questions, understood that he was giving up his trial and appeal rights, would not be able to challenge any part of the government's case, and wished to plead guilty.  (CR 485; RT 5/4/12 7-8, 10-12.)  Defendant was satisfied with Mr. Bresnehan's representation, had no questions about the plea, agreed with everything in the plea, and advised he had not been forced to enter it.  (CR 485; RT 5/4/12 13-15.)  The court reviewed the sentencing guidelines with Defendant and Mr. Bresnehan, who advised the parties anticipated an offense level of 40, with acceptance of responsibility and a three level enhancement for Defendant's role in the offense, but that he would be asking for less.  (CR 485; RT 5/4/12 18, 22.)  The court stated explicitly and Defendant stated he understood that he faced a statutory maximum of life in prison, could receive

around 25 years in prison, and that no one knew what his exact sentence would be.  (CR 485; RT 5/4/12 16-20, 23.)  Defendant was also advised that if he chose not to go through with his guilty plea, the government was free to charge him with any crimes about which it had evidence.  (CR 485; RT 5/4/12 24.)  Even after Defendant pled guilty, the court again asked if Defendant had any questions, and Defendant said no.  (CR 485; RT 5/4/12 30, 32.)  The change of plea hearing makes clear that Defendant was well-informed regarding how his guilty plea affected his various rights and his possible sentencing range.  (CR 485; RT 5/4/12 17-18.)

Following the change of plea, Mr. Bresnehan joined Defendant at his interview with the Probation Department.  (Exhibit 1 at ¶ 11.)  In his affidavit, Mr. Bresnehan discusses in detail his rationale in advising Defendant not to verbally provide further information about the crimes to the Probation Department, but instead to do so in writing.  (Exhibit 1 at ¶ 11.)  Mr. Bresnehan anticipated that Defendant would receive a three level reduction for acceptance of responsibility.  (Exhibit 1 at ¶ 13.)  Mr. Bresnehan further notes that before he could submit Defendant's written acceptance of responsibility and before any PSR was provided by the Probation Department, Defendant obtained substitute counsel.  (Exhibit 1 at ¶ 12.)  Mr. Bresnehan's professional opinion is that Defendant would have been entitled to a reduction of three additional levels.  (Exhibit 1 at ¶ 13.)

Defendant claims that between May 4, 2012 and May 29, 2012—the date Defendant signed a substitution of counsel motion—he somehow realized that he faced a life sentence mandated by the plea and sought new counsel.  (Civil CR 2, 3.)  Defendant is mistaken— 21 U.S.C. § 841(b)(1)(A) allows for the imposition of a life sentence, but the plea agreement he signed, entered, and later withdrew from did not mandate a life sentence.  Defendant is also wrong that the Probation Department's reports mandated a particular sentence.  The court advised him during his change of plea hearing that the sentencing guidelines were advisory only and that his sentence was not controlled by them.  (CR 485; RT 5/4/12 20-21.)  Further, based upon a review of its file, the government does not believe

that a draft PSR was prepared and available to the parties in May 2012, so the government believes Defendant's claims about a PSR prompting him to retain new counsel are inaccurate.

Mr. Bresnehan's representation of Defendant was not deficient in any way.  Mr. Bresnehan litigated several issues through a significant motions practice, secured a criminal settlement conference for his client (which is rare), and negotiated a more favorable plea for Defendant.  For reasons articulated by Defendant in his civil case filings, he wanted to pursue suppressing the wiretaps and wanted to substitute Mr. Morgan onto his case.  The Court held two separate hearings at which the decision to withdraw from his plea and pursue a suppression motion was discussed and debated in detail, and the Court asked Defendant if he had any questions as discussed below.  Defendant could have changed his mind and kept his guilty plea.  He chose not to, and proceeded to litigate his case.  The fact that he did not prevail in his subsequent litigation and trial does not render Mr. Bresnehan's assistance ineffective.  Defendant's claim should be denied.

### C. Claim One: The Court authorized substitute counsel, Mr. Morgan, without proper procedures[3]

Defendant contends that the Court allowed Mr. Morgan to substitute as his new attorney without following proper procedures.  (Motion at Page 4.)  This claim is unsupported by the record and law and should be denied.

On June 7, 2012, Mr. Morgan filed a Motion to Substitute Attorney in Defendant's case. (CR 291.)  The motion provided background information on Mr. Morgan's meetings with Defendant, his awareness of the sentencing date, his discussions with Defendant's family about payment, steps Mr. Morgan had taken to get up-to-speed on the case, relevant

---

[3] Per the Court's order, Mr. Morgan filed an affidavit, under seal, with the Court on January 19, 2018.  (Civil CR 18.)  Although undersigned counsel received ECF notice of the filing, she is not able to see the affidavit.  Therefore, Mr. Morgan's affidavit is not included in the government's Response.

case law, and local civil rules that governed the substitution.  The motion was signed by Defendant and Mr. Morgan on May 29, 2012, and by Mr. Bresnehan by electronic signature on June 7, 2012.

On June 8, 2012, Mr. Bresnehan filed a Motion to Withdraw as Attorney because Defendant had retained Mr. Morgan to represent him.  (CR 293.)  This motion advised the Court that Mr. Morgan was aware of all hearing dates and deadlines.  On June 21, 2012, the Court granted both motions.  (CR 299.)

 An attorney may substitute as attorney of record in any pending action if he follows the procedure set forth in Local Civil Rule 83.3(b).  Here, Local Civil Rule 83.3(b)(1) applied because the application bore the written approval of the client—the signature of Defendant—and Mr. Morgan provided a proposed written order.  *See EEOC v. Sunfire Glass, Inc.*, No. CV-08-1784-PHX-LOA, 2009 WL 2450472 at *1-2 (Ariz. Dist. Ct. Aug. 11, 2009.)  Even though he did not need to by Rule, Mr. Morgan went a step further and provided a formal motion to the Court along with the proposed order.  Defendant states that "[i]t was not smart to substitute counsel…without a hearing," but offers no law to support his wish for a hearing.  (Civil CR 3 at Page 6.)

Because Mr. Morgan followed the procedure set forth in the applicable local rule, and because Defendant signed the application/motion, the Court's grant of the motion followed the proper procedure for the substitution of counsel.  The Court did not need to hold a hearing before granting the motion so that Defendant could be represented by his choice of counsel.  This claim should be denied.

### D.  Claim Two: Mr. Morgan had a financial/personal conflict of interest

Defendant contends in his second claim that trial counsel had a "conflict of interest to protect source of retainment [sic] funds" that denied him his Sixth Amendment right to effective assistance of counsel in the trial process. (Motion at Page 5; Civil CR 3 at Page 10.)  This claim is unsupported by the record and should be denied.

The Sixth Amendment provides that criminal defendants "shall enjoy the right...to have the Assistance of Counsel...." U.S. Const. amend. VI.  Within limits, a defendant is

entitled to counsel of his choosing.  A presumption in favor of defendant's choice "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat v. United States*, 486 U.S. 153, 164 (1988); *see United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984) (Sixth Amendment inquiry properly focused on adversarial process rather than relationship between defendant and lawyer); *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983).  "As a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege." *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995) citing *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995)).

The government inquired with Mr. Morgan as to the source of the funds used to retain him in this case.  Such an inquiry was allowed under *Ralls* and did not create a conflict on Mr. Morgan's part.  As evidenced by the November 29, 2012 hearing transcript, Defendant knew of the government's inquiry and yet expressed no concerns with Mr. Morgan's representation when asked by the Court.  (CR 486; RT 11/29/12 19-20.)  As seen in the December 13, 2012 hearing transcript, Defendant knew the government raised the fee payment issue with the Court, but once again, Defendant voiced no issues with Mr. Morgan's representation or the course of action Mr. Morgan outlined to the Court for the future of the case.  (CR 490; RT 12/13/12 3.)  The government advised the Court of its inquiry and intent to file a motion, but ultimately chose not to file a motion with the Court on the issue.  (CR 490; RT 12/13/12 12-13.)

Mr. Morgan's absence of conflict is further shown through his representation of Defendant after the December 2012 hearing.  Mr. Morgan pursued a motion to suppress the wiretaps in the case on behalf of Defendant with extensive exhibits (CR 372, 373, 374, 375), concurred with and/or prepared joint trial pleadings with the government (CR 406, 412, 413, 415, 416), submitted separate jury instructions for the Court's consideration (CR 414, 431), engaged in vigorous cross-examination of government witnesses at trial (CR 495; RT 5/21/13 49-54, 69-73, 84-87; CR 496; RT 5/22/13 156-68, 179-204, 213, 227-34, 263-65, 286-94, 329-36; CR 497; RT 5/23/13 364-401, 410; CR 498; RT 5/24/13 499-528,

CR 499; RT 5/28/13 754-831; CR 500; RT 5/29/13 883-925), pursued a written motion for declaration of mistrial with oral argument (CR 429; CR 499; RT 5/28/13 851-55; CR 500; RT 5/29/13 861-77), argued for a directed verdict for Defendant (CR 432; CR 500; RT 5/29/13 948-49; CR 501; RT 5/30/13 1067-75), and argued orally for a dismissal of conviction and a reduced sentence for Defendant. (CR 462, 502; RT 8/12/13 2-3, 14-19.) Mr. Morgan's efforts in this case make it apparent that he labored under no conflict of interest.  Defendant's meritless claim should be denied.

### E.  Claim Two: Mr. Morgan was ineffective and committed grave mistakes

Defendant also contends in his second claim that he was denied his right to effective assistance of counsel because Mr. Morgan was ineffective as a result of his alleged conflict of interest and committed grave mistakes.  (Motion at Page 5.)  Defendant does not articulate any specific mistakes Mr. Morgan allegedly made, but says these mistakes led to "harsher trial/sentencing consequences, denial of downward departures and additional counts and consecutive sentences."  (Civil CR 3 at Page 7.)

As outlined above, Mr. Morgan had no conflict of interest in this case, therefore a non-existent conflict cannot be the basis of Defendant's ineffective claim.   At the November 29, 2012 hearing, Mr. Morgan informed the Court that he had discussed the case at length with his client, that the plea was an empty plea, they had reviewed the (2012) PSR, and that Defendant wanted to withdraw from the plea and file a motion to suppress the wiretaps in the case.  (CR 486; RT 11/29/12 14-15.)  Mr. Morgan then asked for additional time to talk with Defendant, and the hearing was continued to December 13, 2012.  At that hearing, Mr. Morgan advised the Court that he had discussed withdrawing from the plea extensively with Defendant, went through the pros and cons with him, and Defendant wished to withdraw from his guilty plea.  (CR 490; RT 12/13/12 3.)  The Court confirmed that information with Defendant, who unequivocally stated "yes" to withdrawing his guilty plea.  (CR 490; RT 12/13/12 3.)

Mr. Morgan's representation of Defendant, already in its sixth month, continued through the remainder of his criminal matter.  As discussed above, Mr. Morgan filed a

lengthy, detailed motion to suppress the wiretaps in this case, along with related exhibits. (CR 372, 373, 374, 375.)  He participated in a lengthy oral argument before the Court regarding the merits of the motion.  (*See* CR 492; RT 3/25/13.)  After the motion to suppress was denied, Mr. Morgan engaged in communications with the government regarding preparing pleadings required for trial and filed independent pleadings on matters on which the parties could not agree as noted above.  During trial, Mr. Morgan cross-examined the government's witnesses extensively regarding issues that were key to the defense, filed a motion for a mistrial, argued for a directed verdict, and made arguments to the Court and jury as cited above.  At sentencing, Defendant acknowledged that Mr. Morgan reviewed the PSR with him and that it was accurate.  (CR 502; RT 8/12/13 5.)  Mr. Morgan argued for the dismissal of one of the firearms convictions, and argued for a below-guidelines sentence similar to that received by a codefendant.  (CR 502; RT 8/12/13 14-19.)

Defendant mentions that he wanted to testify at his trial and sentencing regarding his presence in the United States and outstanding medical bills in Mexico.  (Civil CR 2 at Page 4.)  The government opines that Mr. Morgan counseled against such testimony because Defendant would have admitted to another federal crime—being in the United States illegally—which may have prejudiced the jury against him and may have resulted in another felony charge.  That testimony would have also placed Defendant in the United States, specifically the Phoenix area, during the timeframe of the conspiracy in which he was charged.  It would have allowed the jury to hear his voice, which would have confirmed for the jury it was the same voice they heard on intercepted wiretap calls.  Further, having bills to pay is not a legally recognized defense and once again, would have involved Defendant admitting to engaging in the charged conduct.  Although Defendant may think he had a good reason for his criminal actions and wanted to share it with the jury, Mr. Morgan would have known Defendant's proffered reason for committing crimes would not likely result in an acquittal and could actually help prove elements of the government's case while establishing Defendant's identity as one of the conspirators.  Therefore, the

decision not to have Defendant testify cannot be seen as a grave error based upon the facts in the record, but rather a strategic trial decision by experienced counsel.

Defendant fails to show that his counsel was ineffective or made any grave mistakes. The fact that the jury ultimately resolved the issue of guilt against Defendant, in light of overwhelming evidence, and then the Court sentenced him to prison does not establish deficient performance by trial counsel.

Defendant offers only mere speculation that he was prejudiced by his trial counsel's alleged shortcomings.  Mere speculation is not enough to undermine confidence in the outcome of the trial as required by *Strickland*.  Defendant has, therefore, failed to state a claim for which relief can be granted.  *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (cursory allegations that are purely speculative cannot support a claim of ineffective assistance of counsel); *United States. v. Donn*, 661 F.2d 820, 825 (9th Cir. 1981) (defendant "must have made reasonably plausible factual allegations that state a claim on which relief could be granted.")

The reality is that Mr. Morgan presented Defendant with a different way to proceed in his case, which Defendant wanted.  (*See* Civil CR 2, 3.)  Defendant did not want to maintain his guilty plea because he believed he was agreeing to a life sentence; he wanted to defend against his charges and try to suppress the wiretaps, and Mr. Morgan agreed to litigate his case.  Simply because Defendant is now unhappy with the result of his decision does not mean that Mr. Morgan was ineffective or that he committed any grave mistakes. Defendant's second claim should be denied.

**F.  Claim Three: Appellate counsel, Ms. Hinchcliffe, was ineffective**

Defendant contends that his appellate counsel, Nancy Hinchcliffe, was ineffective for failing to raise the following issues on appeal: (1) *Alleyne* error in "stacking firearms over statutory minimum of five years;" (Motion at Page 7) and (2) "probing the *Johnson* residual clause application."  (Civil CR 2 at Page 4.)  Because the government has already

demonstrated that these claims are meritless, and thus Ms. Hinchcliffe was not ineffective for failing to raise these claims—thereby undercutting his claim that he has cause to excuse his procedural default on these claims—no further response on these claims is necessary.

However, in an abundance of caution, the government asked Ms. Hinchcliffe to submit an affidavit concerning her representation of Defendant on appeal. (Attachment 2.) As Ms. Hinchcliffe states in her affidavit, based upon her review of the case, statutes, and jury findings, there was no *Alleyne* error or *Johnson* claim to raise on appeal. She notes that the Court properly instructed the jury on the elements of the offenses, and that the jury made the necessary findings beyond a reasonable doubt that required a mandatory minimum sentence be imposed. (Attachment 2 at ¶¶ 7, 8, 12.) Ms. Hinchcliffe determined that 18 U.S.C. § 924(c)(1)(A)(i) imposed a penalty of a mandatory minimum five years' imprisonment up to life, served consecutive to the drug trafficking offenses. (Attachment 2 at ¶ 10.) As such, the Court had the discretion to sentence Defendant to any sentence within this range, and its sentence of ten years was "based on sentencing facts, the number and type of weapons that were possessed and the circumstances surrounding the offense." (Attachment 2 at ¶ 11.) Further, her plain reading of the facts of Defendant's case made it obvious that *Johnson* had no application to Defendant's case. (Attachment 2 at ¶¶ 15-19.)

Given that Ms. Hinchcliffe had the authority to determine which issues should be raised, and that the issues Defendant wanted raised on appeal are meritless, Defendant did not receive ineffective assistance of appellate counsel, and is not entitled to relief on this basis.

### G. Defendant is not entitled to a hearing

A prisoner is not entitled to an evidentiary hearing on his habeas claim, if "the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b). This Court may deny a hearing if a prisoner's allegations, "viewed against the record, fail to state a claim for relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'" *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (quoting *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir.

1985)) (internal quotation marks omitted).  To earn the right to a hearing, a prisoner must "allege specific facts which, if true, would entitle him to relief."  *Id*.  Defendant has not provided the Court with facts sufficient to warrant an evidentiary hearing in this matter.

## VI.    CONCLUSION

Defendant's claims of ineffective assistance of counsel are not supported by the facts of the case or relevant law.  Based on the foregoing, the United States respectfully requests this Court deny Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255.

Respectfully submitted this 22nd day of January, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/Jonell L. Lucca*
JONELL L. LUCCA
Assistant U.S. Attorney

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following, who is not a registered participant in the CM/ECF system:

Artemio Pena-Torrecillas
#36541-308
USP Lompoc
U.S. Penitentiary
3901 Klein Blvd.
Lompoc, CA 93436


By: *s/Raquel Lopez*
U.S. Attorney's Office